Francis W. HOEBER, Acting Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 30, UNITED SLATE, TILE AND COMPOSITION ROOFERS, DAMP AND WATERPROOF WORKERS ASSOCIATION, AFL–CIO, Respondent.

Civ. A. No. 90–7899.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 1991.

Dorothy L. Moore–Duncan, N.L.R.B., Philadelphia, Pa., for petitioner.

William T. Josem, Philadelphia, Pa., for respondent.

1. NLRB case no. 4–CD–765; 298 NLRB 142.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is the Petition of Francis W. Hoeber ("Petitioner"), Acting Regional Director of the Fourth Region of the National Labor Relations Board ("NLRB"), for a temporary injunction pursuant to section 10($l$) of the National Labor Relations Act (29 U.S.C. sec. 160($l$)). On behalf of the NLRB Petitioner seeks to temporarily enjoin Respondent, Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Association, AFL–CIO, ("Local 30"), from continuing to litigate Civil Action No. 90–2105, filed in this court on March 26, 1990. Local 30 filed that lawsuit to enforce a decision of the Roofing and Sheet Metal Contractors' Association of Philadelphia and Vicinity ("RSMCA") Joint Conference Board directing Gundle Lining Construction Corporation ("Gundle"), the defendant to Local 30's lawsuit, to compensate members of Local 30 who were deprived of certain work opportunities at the Ocean County Landfill related to a Memorandum Agreement between Local 30 and Gundle.

This court's jurisdiction to hear the petition is conferred by section 10($l$) of the National Labor Relations Act (NLRA). Petitioner now asserts that in light of the NLRB's June 28, 1990 decision[1] pursuant to section 10(k) of the NLRA ("the 10(k) decision"), which decision held that another union, Laborers Local 172, Laborers International Union of North America, AFL–CIO, ("Local 172"), was entitled to perform the work at issue, there is reasonable cause to believe that by continuing to prosecute and litigate the lawsuit Local 30 is committing an unfair labor practice in violation of section 8(b)(4), subparagraph (D) of the National Labor Relations Act ("NLRA").

For reasons stated more fully below, I conclude that Petitioner has not sufficiently demonstrated reasonable cause to believe that Local 30 is committing an unfair labor practice by prosecuting its lawsuit.

The Petition for an injunctive relief will thus be denied.

## RELEVANT FACTUAL BACKGROUND

The underlying dispute between Local 30 and Gundle arose out of Gundle's decision not to employ Local 30 workers to perform certain liner installation work commenced November 6, 1989 at Cell No. 4 of the Ocean County Landfill, Lakehurst, New Jersey. Gundle employed Local 172 to do that work pursuant to a project agreement executed by Local 172 and Gundle on or about November 1, 1989. The Local 172 Project Agreement binds Gundle to abide by the terms and conditions of Local 172's collective bargaining agreement with the Association of General Contractors of New Jersey through completion of the work on the Cell No. 4 project.

Local 30 contends that Gundle's failure to employ Local 30 for that project violated a Memorandum Agreement between Gundle and Local 30 entered into November 18, 1988. The Local 30 Memorandum Agreement binds Gundle to abide by the terms and conditions of the collective bargaining agreement in effect, "as of 11/1/88 through COMPLETION," (emphasis in original) between Local 30 and the RSMCA. The Local 30 Memorandum Agreement with Gundle also states that the parties, "further agree to be bound by all extensions, amendments and changes negotiated ...," with respect to the collective bargaining agreement between Local 30 and the RSMCA.

Gundle, a Texas-based manufacturer and installer of high-density polyethylene liners for landfills, has previously been awarded several contracts to perform liner installation work at the Ocean County Landfill ("Landfill"). Local 30 has been employed by Gundle to perform at least three work projects at the Landfill in connection with those contracts. The first of these projects began prior to the fall of 1988. The second work project began in the fall of 1988 and was accompanied by the execution of the Memorandum Agreement between Local 30

and Gundle. That project was completed in February, 1989. Local 30 was then employed by Gundle at a third work project performed at the Landfill in July, 1989. Members of Local 30 who performed these work projects were paid by Gundle in accordance with the collective bargaining agreement then in effect between Local 30 and the RSMCA.

Sometime prior to November 1, 1989 Gundle was contacted by the Landfill regarding the possibility of employing a different union, Local 172, to perform the work on Cell No. 4.[2] The work contract for Cell No. 4 was awarded to Gundle by the Landfill in September, 1989. Gundle proceeded to enter into the Local 172 Project Agreement on November 1, 1989 and commenced work on Cell No. 4 at the Landfill, employing Local 172, on November 6, 1989.

Upon discovering that Gundle was employing Local 172 for the Cell No. 4 work project, Local 30 established a picket line at the Landfill on November 8, 1989, believing that Gundle had hired non-union employees to perform the work at below-standard wages. Local 30 picketed for approximately two hours before discovering that it was other unionized employees, members of Local 172, who were performing the work for Gundle on Cell No. 4. Local 30 then ceased picketing the Landfill.

On November 13, 1989, Gundle filed an unfair labor practice charge with the NLRB stating that Local 30 had engaged in picketing and other coercive activity in an effort to coerce Gundle to assign the work on Cell No. 4 to Local 30 rather than to Local 172. On November 14, 1989, Local 30 informed Gundle of its intention to file a grievance protesting Gundle's alleged violation of the collective bargaining agreement between Local 30 and the RSMCA. By letter to the RSMCA dated December 5, 1989, Local 30 requested that pursuant to the collective bargaining agreement's provisions for the hearing of grievances the RSMCA convene a Joint Conference Board meeting to hear this grievance against Gundle. Gundle communicated to the

---

**2.** Testimony of Michael Sullivan, Gundle executive, given at the hearing before this court on

Petitioner's Motion for Temporary Injunction, January 16, 1991.

RSMCA by letter dated December 28, 1989, its contention that the Memorandum Agreement between Local 30 and Gundle had expired concurrently with the expiration of a previous work contract between Gundle and the Landfill. Gundle contended that since the work on Cell No. 4 was being done according to a new work contract between Gundle and the Landfill, Local 30's collective bargaining agreement did not apply, and thus the RSMCA had no jurisdiction over the dispute.

The Joint Conference Board of the RSMCA met on January 3, 1990 to consider Local 30's grievance against Gundle. On January 4, 1990, Local 30 informed the NLRB by letter that it no longer intended to demand that it be assigned to perform the Cell No. 4 project and only sought to reserve its right to pursue a remedy for Gundle's alleged violation of the Memorandum Agreement. Local 30 stated that it disclaimed any right to be assigned the work because its collective bargaining agreement limits the claim to monetary damages. The Joint Conference Board of the RSMCA followed with a decision on January 17, 1990, holding that the Memorandum Agreement of November 18, 1988 between Local 30 and Gundle applied to the work project begun November 6, 1989 at Cell No. 4 of the Landfill. The decision directed Gundle to compensate members of Local 30 who were deprived of work opportunities relating to the Cell No. 4 work project, including the payment of dues, wages and benefit contributions required by the Memorandum Agreement and the collective bargaining agreement in effect.

Subsequent to that decision, the NLRB held hearings, pursuant to section 10(k) of the NLRA, on Gundle's unfair labor practice charge against Local 30. The hearings took place on March 13 and 21, 1990. Soon thereafter, on March 26, 1990, Local 30 filed Civil Action No. 90–2105, which action Petitioner hereby seeks to enjoin, in order to enforce the January 17, 1990 award of the Joint Conference Board.

On June 28, 1990, the NLRB issued the 10(k) decision, holding that Local 172 was entitled to perform the work for Gundle at Cell No. 4 of the Landfill. The NLRB stated in its decision that while the analysis of the competing work agreements and collective bargaining agreements did not yield any basis from which to assign the work to one union or the other, employer preference, area practice and efficiency of operations favored the assignment of the work to Local 172. The NLRB emphasized further that Local 30 was not entitled to force Gundle to assign the work at Cell No. 4 of the landfill to Local 30 by means proscribed by Section 8(b)(4)(D) of the NLRA.

No evidence of record exists to suggest that Local 30 has engaged in any picketing, boycotting, or other activity, outside of the November 8, 1989 picketing, in attempts to coerce Gundle to assign the work at issue to Local 30. In fact Local 30 has expressly disclaimed any desire or intention to perform the work in question. Local 30's only activity relating to this dispute since the 10(k) decision has been to continue litigating the lawsuit it filed on March 26, 1990 in the hopes of enforcing the award of the Joint Conference Board.

By its present motion, Petitioner seeks to invoke section 10($l$) of the NLRA to temporarily enjoin Local 30 from continuing to litigate its lawsuit in this court pending an NLRB unfair labor practice hearing against Local 30. The Petitioner asserts that there is reasonable cause to believe that Local 30, by its prosecution of Civil Action No. 90–2105, is committing an unfair labor practice within the meaning of section 8(b)(4)(D) of the NLRA in that Local 30 is thereby attempting to coerce Gundle to assign the work at issue to Local 30 instead of Local 172.

## DISCUSSION

*I. Standard for Issuance of an Injunction under Section 10(l).*

Section 10($l$) of the NLRA requires the Regional Director of the NLRB to seek injunctive relief in an appropriate federal district court when he has reasonable cause to believe that certain unfair labor practices within the meaning of sections 8(b)(4)(A), (B), (C), section 8(e) or section 8(b)(7) have occurred. Where such relief is sought pur-

suant to section 10(*l*) the section provides that a district court may grant "such injunctive relief or temporary restraining order as it deems just and proper ..." Section 10(*l*) further provides that where such relief is appropriate the procedure specified therein shall apply to charges with respect to section 8(b)(4)(D).

The district court may find "reasonable cause" where the alleged facts and legal theories underlying the Regional Director's petition are "substantial and not frivolous". *Samoff v. Building Trades Council of Philadelphia*, 475 F.2d 203, 207 (3d Cir. 1973). The issuance of an injunction is "just and proper" where it is "necessary to prevent a frustration of the remedial purposes of the Act." *Scott v. El Farra Enterprises, Inc.*, 863 F.2d 670, 674 (9th Cir. 1988). Thus the district court must evaluate the injunction for "consistency with the statutory purposes." *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 747 (9th Cir.1988).

As pointed out correctly by Petitioner, section 10(*l*) of the NLRA embodies Congress' determination that certain unfair labor practices, including union attempts to coerce employers to alter work assignments, threaten to disrupt commerce such that their discontinuance pending NLRB review may be necessary. The Senate Report on the bill which became the NLRA explains the policy and purpose behind Section 10(*l*) as being "the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining."[3]

## II. Conflict between Local 30's Section 301 action and NLRB's 10(k) decision.

Petitioner's argument that the contractual issues which are the substance of Local 30's Section 301 action is a "red herring" in this proceeding is inaccurate. The fact that this court need not proceed to matters of contractual construction for purposes of the section 10(*l*) petition does not render that aspect of this dispute meaningless in the context of the decision whether to grant Petitioner's motion for injunctive relief. Instead, as Petitioner asserts, the existence of the contractual issue merely does not preclude this court from granting section 10(*l*) relief.

A review of the cases cited by Petitioner in support of its motion reveals that the nature of the conflict between a disappointed union's contractual claim and the NLRB's 10(k) decision in the same dispute is significant for purposes of determining whether legal proceedings initiated by a union to recover on its contractual claim are an unfair labor practice within the meaning of Section 8(b)(4)(D).[4] The extent of such conflict and its bearing on the issue of NLRB "supremacy" provides a basis from which to determine whether Local 30's lawsuit is (1) improperly motivated (e.g. retaliatory or spiteful) and (2) without reasonable basis in law, the two factors enunciated by the Supreme Court as being relevant to the question of whether the prosecution of a lawsuit is in itself an unfair labor practice.[5] Since this court's in-

---

**3.** S.Rep.N. 105, 80th Cong., 1st Sess. 8, 27 (1947), reprinted in 1 *Leg. Hist.* 414, 433 (LMRA 1947).

**4.** The Circuit Courts in both *Longshoremen ILWU Local 32 v. Pacific Maritime Assn.*, 773 F.2d 1012 (9th Cir.1985) and *Longshoremen ILWU v. NLRB*, 884 F.2d 1407 (D.C.Cir.1989) affirmed NLRB determinations of unfair labor practices based mainly on the conclusion that the enforcement of the charged union's contract claim would so conflict with the NLRB's 10(k) decision as to completely undermine the 10(k) decision. Under the "supremacy doctrine", which bars an arbitrator from making an award inconsistent with an NLRB determination, the 10(k) decision must take precedence, with the result that the union's legal proceeding to enforce either the disputed labor contract directly or any arbitration/grievance award based on the contract could not proceed. *See e.g., Local Joint Executive Board v. Royal Center, Inc.*, 754 F.2d 835 (9th Cir.1985).

**5.** In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Supreme Court set forth the two-pronged standard of improper motivation and reasonable legal basis in the context of a possible NLRA section 8(a)(1) unfair labor practice. This standard has been applied to unfair labor practice charges under NLRA section 8(b)(1) and 8(b)(4) as well. *See e.g., Pacific Maritime, supra, n. 3,* 773 F.2d at 1015.

junction pursuant to section 10(*l*) of Local 30's lawsuit requires a finding of reasonable cause to believe that Local 30's filing and continued prosecution of Civil Action No. 90–2105 is an unfair labor practice within the meaning of Section 8(b)(4)(D) of the NLRA, the degree of conflict between Local 30's contractual claim and the 10(k) decision is thus relevant.

■ After close scrutiny of the NLRB's June 28, 1990 10(k) decision holding that Local 172 was entitled to perform the work at issue here, I do not believe that a potential affirmation of the Joint Conference Board's award of damages to Local 30 is repugnant to that decision. First, the NLRB's 10(k) decision specifically declined to evaluate the validity of the two unions' competing contractual claims relating to the Cell No. 4 work project at the Landfill. The NLRB's determination that Local 172 was entitled to do the work at issue was based only on employer preference, area practice, and economy and efficiency of operations. Thus neither the decision of the Joint Conference Board of the RSMCA awarding damages to Local 30 nor any decision of this court affirming or rejecting that award threaten to tread on the grounds covered by the NLRB in its 10(k) decision. Local 30's lawsuit addresses a contractual issue, the issue on which the NLRB expressly denied making any judgment in its 10(k) decision.

Second, the coexistence of the Joint Conference Board's award and the NLRB's 10(k) decision does not force Gundle "between the devil and the deep blue" such that the policies behind the NLRA mandate the disallowance of Local 30's lawsuit. The Joint Conference Board did not award the work to Local 30. And contrary to the repeated assertions of the NLRB in its submissions to this court, Local 30 is not seeking employment at the work project in dispute. This court realizes that in order for an unfair labor practice to exist within the meaning of NLRA 8(b)(4)(d) the charged union must be acting with the intent to coerce an employer to actually assign the disputed work to the charged union—thus the need for Petitioner to assert this in its unfair labor practice charge. However a distinction must be made between the picketing on the part of Local 30 November 8, 1989, and the lawsuit filed to enforce the Joint Conference Board's January 17, 1990 award. While the picketing may have been interpreted as an attempt to pressure Gundle, and while the picketing was certainly a proper subject for the unfair labor practice charge made by Gundle and the subsequent 10(k) decision, it appears unlikely that by its prosecution of Civil Action No. 90–2105, Local 30 is attempting to gain the employment given to Local 172 by Gundle.

In fact, Local 30 has expressly disavowed a claim to the employment at the Cell No. 4 work project. The Joint Conference Board's award did not grant Local 30 the disputed work, nor did the 10(k) decision express any disagreement with the Joint Conference Board's decision. The 10(k) decision merely pronounce that Local 172 was entitled to do the work. Petitioner cites several cases for the proposition that to permit a union to seek contractual damages where it has disclaimed rights to the work would be to permit forum-shopping between arbitrators, courts, and the NLRB.[6] However in those cases an arbitrator had ordered the employer to hire one union while an NLRB 10(k) decision had awarded the same work to another union. Thus a direct conflict existed between the arbitrator and the NLRB. Union attempts to enforce the arbitrator's decision in those cases could thus be seen as repugnant to, and in circumvention of, the NLRB's ruling. Furthermore, in those cases it would have been impossible for the employer to act consistently with both the arbitrator's ruling and that of the NLRB. This is not the case here.

Without making any conclusions as to the enforceability of the Joint Conference Board's award, I believe that the NLRB's 10(k) decision addressed issues sufficiently distinct from those addressed by the Joint

---

6. *J.F. White Contracting Co. v. Electrical Workers IBEW Local 103,* 890 F.2d 528 (1st Cir.1989); *Auto Workers v. Rockwell Int'l Corp.,* 619 F.2d 580 (6th Cir.1980).

Conference Board so as to make the decisions of the two bodies consistent. The NLRB considered the competing claims of two unions—Local 30's claim to the work as compared to Local 172's claim to the same work—and decided that Local 172 should perform the work based on a variety of noncontractual factors. The Joint Conference Board only considered the legitimacy of Local 30's contractual claim against the employer, Gundle. The compensatory damages award ordered by the Joint Conference Board was not based on a determination that Local 30 had a superior claim to employment at the Cell No. 4 project. The Joint Conference Board only expressed a determination that Local 30 had a legitimate contractual claim against Gundle.[7] Thus the Joint Conference Board award does not conflict with the NLRB's 10(k) decision.[8]

### III. Reasonable Cause to believe that Local 30 is committing an 8(b)(4)(D) unfair labor practice by prosecuting Civil Action 90–2105.

In *Retail Clerks Local 137 v. Food Employers Council, Inc.*, 351 F.2d 525 (1965), the Ninth Circuit outlined Congress' basic policy behind section 10(*l*):

Section 10(*l*) reflects a Congressional determination that the unfair labor practices enumerated therein are so disruptive of labor-management relations and threaten such danger of harm to the public that they should be enjoined whenever a district court has been shown reasonable cause to believe in their existence and finds that the threatened harm

or disruption can best be avoided through an injunction.

351 F.2d at 531. Petitioner has failed to establish the "threatened harm or disruption" caused by Local 30's prosecution of its lawsuit, the prevention of which requires an injunction be issued by this court. It is without question that the NLRB exercises primary jurisdiction in construing the NLRA and in determining what is or is not an unfair labor practice.[9] Hence the adoption of the lenient "reasonable cause" standard for purposes of awarding section 10(*l*) relief. However while a district court should not require that an unfair labor practice be proven in order to issue an injunction pursuant to section 10(*l*), sufficient facts must be presented from which the district court can reasonably assume that an unfair labor practice is taking place, and that questions of labor policy are involved which are best left to the NLRB to solve.

Petitioner has not sufficiently established reasonable cause to believe that Local 30's prosecution of the lawsuit is an unfair labor practice within section 8(b)(4)(D) such that an injunction of the lawsuit is just and proper. With the exception of three hours of picketing by Local 30 on November 8, 1989, which activity was dealt with by the NLRB in its 10(k) decision of June 28, 1990, Petitioner has presented no evidence of coercive activity such as striking, picketing or boycotting on the part of Local 30. The sole activity at issue here is the filing by Local 30 of Civil Action No. 90–2105 on March 26, 1990 seeking

---

**7.** The possibility that Gundle would have to pay two unions for work performed only by one would not force Gundle to act inconsistently. Such a contingency would only be an unfortunate result of Gundle's decision to enter into conflicting labor agreements. *See e.g., Hutter Construction Co. v. Operating Engineers, Local 139*, 862 F.2d 641 (7th Cir.1988).

**8.** Petitioner's reliance on Supreme Court dicta in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964) is misplaced. In *Carey,* the Court held that disputes concerning work assignments or representation *were not* within the exclusive province of the NLRB and were appropriate subjects of arbitration procedures. The con-

cluding paragraphs of the Court's Opinion, which make up the context from which Petitioner attempts to draw support, emphasize the Court's belief that the possibility of a conflict is not even enough to prevent a party's resort to a tribunal other than the NLRB. It is only when the NLRB is in direct disagreement with an outside arbiter, by ruling, for example, that certain employees are members of one bargaining unit when the arbiter held them to be members of another, that "the Board's ruling would, of course, take precedence;", or that the "superior authority" of the NLRB would properly be invoked.

**9.** *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982).

enforcement of the Joint Conference Board award.

Petitioner claims that by continuing to litigate and prosecute the lawsuit, Local 30 is attempting to coerce Gundle to assign the Cell No. 4 work project at the Landfill to Local 30 instead of Local 172. I do not agree with Petitioner's characterization of Local 30's lawsuit. By its Complaint, Local 30 alleges to have a legitimate contract claim against Gundle. I do not find that this Complaint was filed with improper motivation or without reasonable basis in law. And while labor relations involve issues of public interest not present in private contractual relationships, there is not sufficient need in this instance to enjoin Local 30's pursuit of its contractual claim before this court, especially where the potential result here would not conflict directly with the NLRB's previous 10(k) decision in this dispute.

Finally, it is noteworthy that while the unfair labor practices provisions of the NLRA and the emergency relief provisions such as section 10(*l*) were drafted mainly to deal with volatile tactics such as strikes, pickets and boycotts often employed by union organizations earlier in this century, Petitioner here seeks to prevent Local 30 from seeking judicial relief. On the facts of record before me, there is not reasonable cause to believe that Local 30 is committing an unfair labor practice within the meaning of section 8(b)(4)(D) of the NLRA by continuing to litigate and prosecute Civil Action No. 90–2105. Petitioner's motion for injunctive relief pursuant section 10(*l*) of the NLRA will thus be denied.