Francis W. HOEBER, Acting Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Appellant,

v.

LOCAL 30, UNITED SLATE, TILE & COMPOSITION ROOFERS, DAMP AND WATERPROOF WORKERS ASSOCIATION, AFL–CIO.

No. 91–1134.

United States Court of Appeals, Third Circuit.

Argued May 15, 1990.

Decided July 30, 1991.

Jerry M. Hunter, D. Randall Frye, Robert E. Allen, Richard A. Siegel, Ellen A. Farrell, Kevin Mulshine (argued), N.L.R.B., Washington, D.C., for appellant.

William T. Josem (argued), Markowitz & Richman, Philadelphia, Pa., for appellee.

Before HUTCHINSON, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal arises as part of a complex, ongoing battle over both the forum for, and the timing of, relief for an alleged breach of contract. Underlying the instant appeal is the district court's denial of a petition by the National Labor Relations Board for an injunction temporarily prohibiting the continued prosecution of a civil action brought by a union to enforce an arbitral award in the union's favor. Because we believe that the district court did not clearly err in finding the facts which formed the basis for its refusal to grant the injunction, and did not abuse its discretion in so refusing, we will affirm the district court's denial of the petition.

### I.

Petitioner–Appellant, Francis W. Hoeber ("Hoeber") is the Acting Regional Director of the Fourth Region of the National Labor Relations Board ("NLRB"). Hoeber, for the NLRB, seeks to enjoin the prosecution of a civil action by Respondent–Appellee Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, AFL–CIO ("Local 30"), pending final disposition of certain matters currently before the NLRB. We begin by outlining the facts which led up to Hoeber's Petition for Injunction.

Over the past several years, Gundle Lining Construction Corporation ("Gundle") has performed liner installation work at the Ocean County Landfill in Lakehurst, N.J. In November 1988, Gundle had a contract to perform lining work in one of the "cells" of the landfill. At that time, Gundle en-

tered into a Memorandum Agreement with Local 30. In the Memorandum Agreement, Gundle agreed to abide by certain collective bargaining terms and conditions "as of 11/18/88 through completion." The project begun in the fall of 1988 was completed by February 1989. Later that year, Gundle again undertook a project at the Ocean County Landfill. This time, Gundle hired workers represented by Local 172, Laborers International Union of North America, AFL–CIO ("Local 172"), rather than members of Local 30, to do the work. Local 30 took the position that this work was covered by the Memorandum Agreement, and therefore that Gundle was contractually bound to hire Local 30's workers.

When Local 30 saw work starting up again at the landfill, it apparently believed the work was being done by non-union employees, and it set up a picket line. Within about two or three hours, however, Local 30 realized that the workers were from Local 172. Local 30 then promptly removed its picket line. On November 13, 1989, Gundle filed an unfair labor practice charge against Local 30, alleging that Local 30 had violated § 8(b)(4)(D) of the National Labor Relations Act ("NLRA").[1] The next day, Local 30 informed Gundle that it would file a grievance over Gundle's failure to abide by the Memorandum Agreement. Local 30 then requested that a Joint Conference Board meet to hear and determine its grievance against Gundle. The Joint Conference Board met on January 3, 1990 to consider Local 30's grievance. The next day, Local 30 advised the NLRB that it was no longer demanding assignment of the work at the landfill to Local 30, but only sought to reserve its right to pursue a remedy for Gundle's al-leged breach of the Memorandum Agreement. Local 30 thus limited its claim to damages, not to the specific work.

On January 17, 1990, the Joint Conference Board issued its decision, which held that Gundle had violated the Memorandum Agreement by hiring Local 172 rather than Local 30 for the landfill job. It directed Gundle to compensate individuals from Local 30 who were deprived of work opportunities by making appropriate payments.

On March 13 and 21, 1990, the NLRB held a hearing pursuant to Section 10(k) of the NLRA ("the 10(k) hearing").[2] On March 26, 1990, Local 30 filed Civil Action No. 90–2105, which is a lawsuit pursuant to § 301 of the NLRA, 29 U.S.C. § 301 ("the § 301 suit"), seeking court enforcement of the Joint Conference Board's decision. On June 28, 1990, the NLRB issued its 10(k) decision, awarding the disputed work to Local 172. Although the Board was aware of the contract entitling Local 30 to the work, it was simultaneously confronted with Gundle's newly formed, conflicting contract with Local 172. Despite the existence of two apparently valid, albeit conflicting contracts, the Board was required, under *National Labor Relations Board v. Radio Engineers*, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961), to make an affirmative award of the work as between the employees of the competing unions. Since both Local 30 and Local 172 now had contracts entitling them to the work from Gundle, the Board made its decision based on other factors. In particular, as the district court noted, the Board took into consideration "employer preference, area practice and efficiency of operations." *Hoeber*,

---

**1.** NLRA § 8(b)(4)(D), 29 U.S.C. § 158(b)(4)(D), makes it an unfair labor practice for a union ... to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

     .     .     .     .     .

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.

**2.** NLRA § 10(k), 29 U.S.C. § 160(k), provides:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of [§ 8(b)(4)(D)], the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen [unless the parties voluntarily settle within ten days].

*for and on behalf of N.L.R.B. v. Local 30,* 759 F.Supp. 212, 215 (E.D.Pa.1991). The Board further emphasized that Local 30 was not to coerce Gundle into assigning the work to it by any means proscribed by NLRA § 8(b)(4)(D).

Since the 10(k) decision, Local 30 has not engaged in any picketing, boycotting, or other activity relating to this dispute, other than to pursue court enforcement of the decision of the Joint Conference Board through its § 301 suit. The NLRB, however, characterizes the pursuit of court enforcement of that decision as itself a coercive practice in violation of § 8(b)(4)(D). The NLRB therefore seeks to invoke NLRA § 10(*l*)[3] to temporarily enjoin Local 30 from continuing to litigate the § 301 suit pending final disposition by the NLRB of Gundle's unfair labor practice complaint against Local 30.

## II.

The district court denied the NLRB's petition for a § 10(*l*) injunction. In explaining its holding, the court first noted that NLRA § 10(*l*) requires the regional director of the NLRB to seek injunctive relief in federal court whenever he has "reasonable cause" to believe that certain unfair labor practices have occurred. The district court is not required to grant injunctive relief under § 10(*l*), however, unless it deems such relief "just and proper." The district court correctly stated that it may find "reasonable cause" to be present when the alleged facts and legal theories

underlying the Regional Director's petition are "substantial and not frivolous." 759 F.Supp. at 216 (citing *Samoff v. Building Trades Council of Philadelphia*, 475 F.2d 203, 207 (3rd Cir.1973) [vacated on grounds of mootness, 414 U.S. 808, 94 S.Ct. 151, 38 L.Ed.2d 44 (1973)]). There is no dispute over this standard.

Secondly, the district court held that the issuance of an injunction is "'just and proper'" where such relief is "'necessary to prevent a frustration of the remedial purposes of the Act.'" 759 F.Supp. at 216 (quoting *Scott v. El Farra Enterprises, Inc.*, 863 F.2d 670, 674 (9th Cir.1988)). In determining the remedial purpose of § 10(*l*), the district court looked to the Senate Report behind the bill, which stated that the bill's purpose was "the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining." S.Rep. N. 105, 80th Cong., 1st Sess. 8, 27 (1947), quoted in *Hoeber*, 759 F.Supp. at 216.

For the district court to enjoin Local 30's lawsuit under 10(*l*), it would have had to find that by filing the lawsuit Local 30 engaged in an unfair labor practice. The district court held that the nature of the conflict, if any, between Local 30's contractual claim and the NLRB's 10(k) decision is significant for purposes of determining whether Local 30's legal proceedings constituted an unfair labor practice under § 8(b)(4)(D). If a conflict is created, the 10(k) provision must take precedence,[4] so

---

**3.** NLRA § 10(*l*), 29 U.S.C. § 160(*l*), provides: Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of [§ 8(b)(A), (B) or (C) or § 8(e) or § 8(b)(7)], the preliminary investigation of such charge shall be made forthwith.... If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the

filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law.... In situations where such relief is appropriate, the procedure specified herein shall apply to charges with respect to [§ 8(b)(4)(D)].

**4.** Under the "supremacy doctrine," which bars an arbitrator from making an award inconsistent with an NLRB determination, a 10(k) decision must take precedence over an arbitral award. Thus, Local 30's enforcement suit could not proceed if it conflicts with the 10(k) decision. *See Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964).

the district court had to determine whether Local 30's lawsuit conflicted with the 10(k) decision.

■ The district court began by outlining the two-pronged standard established by the Supreme Court in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), for determining whether a lawsuit constitutes an unfair labor practice. Under *Bill Johnson's*, before a civil suit can be enjoined, both an improper motivation and a lack of reasonable legal basis for the suit must be demonstrated. The district court next held that the continued prosecution of Local 30's enforcement action would not encroach on the ground covered by the 10(k) decision, because the § 301 suit seeks damages for breach of contract while the 10(k) decision did not address the contractual rights claim, but merely allocated the work to Local 172 for other reasons. The district court also noted that Local 30 was no longer seeking to pressure Gundle into awarding the work to Local 30. Rather, Local 30 was merely suing for damages for breach of contract.

The district court then turned to whether there was reasonable cause to believe that Local 30 was committing an unfair labor practice by prosecuting its civil case. The court noted that to find an unfair labor practice it must determine that Local 30 was acting "with the intent to coerce an employer to actually assign the disputed work to the charged union." 759 F.Supp. at 217. The district court found that Local 30's lawsuit was *not* motivated by a desire to coerce Gundle to assign it the work. In fact, the court pointed out, Local 30 had disavowed a claim to the work, seeking only contract damages. The district court concluded that there was no direct conflict between the lawsuit and the 10(k) decision.

Next, the district court turned to the purpose of 10(*l*) injunctions. As noted above, the policy behind permitting 10(*l*) injunctions is to prevent obstacles to the free flow of business pending resolution by the Board of the underlying unfair labor practice claim. In particular, the 10(*l*) injunction was designed to permit courts to suspend strikes, pickets, boycotts, and other direct interferences with business. The district court held that the lawsuit at issue here was not such a "coercive activity," and that the NLRB had "failed to establish the 'threatened harm or disruption' caused by Local 30's prosecution of its lawsuit" that is required for an injunction to issue. *Id.* at 218. In the absence of harm or disruption, and as the suit was not filed "with improper motivation or without reasonable basis in law," *id.* at 219 (the *Bill Johnson's* standard for injunctions), the district court denied injunctive relief.

## III.

Subject matter jurisdiction of this case in the federal district court derives from Section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*). This court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) (providing for appeal from an interlocutory order denying an injunction).

## A.

The predicate for the Board seeking a 10(*l*) injunction is the charge that a party has engaged in an unfair labor practice. *See* notes 2 & 3, *supra* (reciting the text of NLRA §§ 10(k) and 10(*l*), 29 U.S.C. §§ 160(k) and 160(*l*)). As § 10(k) provides, once it is charged that a person has engaged in an unfair labor practice within the meaning of § 8(b)(4)(D), the Board is authorized to hear and determine the dispute. Section 10(*l*) then provides that the Board shall make a preliminary investigation of such charge, and if there exists reasonable cause to believe that the charge is true, shall petition for appropriate injunctive relief pending final adjudication of the unfair labor practice charge by the Board. Thus, it is the unfair labor practice charge that precedes any authority to seek a 10(*l*) injunction.

Here, the record is undisputed that the unfair labor practice charge resulted from the two or three hours of picketing engaged in by Local 30 before it realized that Gundle's landfill work was being performed by members of another union—i.e.,

Local 172. Local 30 contends, and there has been no contradiction to that contention, that immediately upon this realization the pickets were removed. The record further reveals that there has been no threat of resumed picketing.

Indeed, at oral argument, counsel for the Board could not explain the circumstances under which the picketing commenced and was terminated. Even more significantly, the Board conceded that if it had not been for that brief period of picketing, no proceedings under § 10(*l*) could even have been brought against Local 30. Proceeding from the premise that there was reasonable cause to believe Local 30 had engaged in an unfair labor practice, however, the Board then took the position that even if Local 30's contract claim is valid, Local 30 had forfeited its right to seek damages because it picketed for three hours.[5]

We do not believe that Congress intended the NLRA to permit, let alone require, a federal court to enjoin prosecution of a potentially meritorious lawsuit to enforce a contractual damages award merely because of a brief period of picketing that was apparently based on a mistake or misunderstanding and that has not been shown to have had any long-lasting detrimental effect on the conduct of business. Hence, the very predicate for a § 10(*l*) injunction in this case appears extremely dubious. The Board, however, has yet to make a final determination of the underlying unfair labor practice charge. We are therefore in no position to review the Board's ruling on that issue. Even assuming, however, that an unfair labor practice was properly charged—a matter with which we have serious concern—we turn to the tests that must be met for the imposition of a 10(*l*) injunction.

## B.

■ In a § 10(*l*) injunction proceeding, our standard of review involves three separate determinations—determinations that the district court must make before it may issue a § 10(*l*) injunction. First, we review the district court's determination as to whether there is "a substantial legal theory explicit or implicit in the case that would support a finding that an unfair labor practice had occurred." *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1085 (3rd Cir. 1984). This is a legal question over which we have plenary review. *Id.*

Second, if a substantial legal theory exists, we apply a deferential standard of review to the district court's determination as to whether or not the facts satisfy the theory. "[O]nly if [we] believe[ ] the district court *clearly erred* in finding the facts and whether the facts satisfied the theory may the appellate court reverse" on this second component. *Id.* at 1086.[6]

Thirdly, the district court's discretionary decision as to whether or not to award injunctive relief under the "just and proper" standard is subject to review only for abuse of discretion. *Id.* at 1090.

## IV.

### A.

■ The first factor is whether the NLRB has established a substantial and nonfrivolous legal theory on the basis of which Local 30's § 301 enforcement lawsuit could possibly constitute an unfair labor practice.[7] The NLRB must simply show

---

5. The following colloquy occurred at oral argument between the court and counsel for the NLRB:
   THE COURT: The Board's position is that even if Local 30 is determined to have a valid contract for this work, its three hours of picketing precludes it from seeking damages for breach of that valid contract?
   COUNSEL: Yes, your honor.

6. These first two factors together constitute the "reasonable cause" determination. As we held in *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076

at 1085, "reasonable cause" breaks down into a legal question and a factual question, which are analyzed under two different standards of review.

7. We have already discussed the tenuous nature of the picketing charge at issue here. The determination of an unfair labor practice, however, is of course a matter for the Board. While, under our assessment, the picketing charge leaves a great deal to be desired, our disposition of this appeal is not based on that issue but

that the legal theory underlying its argument that Local 30's enforcement suit is an unfair labor practice is "substantial and not frivolous." *Hirsch v. Building and Constr. Trades Council*, 530 F.2d 298, 302 (3rd Cir.1976). Having relied upon Local 30's picketing to provide reasonable cause for finding an unfair labor practice as a jurisdictional basis for a § 10(*l*) injunction proceeding, the NLRB now theorizes that the filing and prosecution of Local 30's lawsuit is inherently coercive, because it brings pressure to bear on Gundle to reassign its liner installation work from Local 172 to Local 30.[8] This theory on its face, despite our unease with the NLRB's reliance on Local 30's picketing, would appear to be sufficient to satisfy the "substantial and nonfrivolous legal theory" factor required by *Hirsch* and *Kobell*.[9]

### B.

■ The second factor that the NLRB must establish is that the facts of the instant case—i.e. the action taken by Local 30—fits the NLRB's legal theory. The district court found that the actions taken by Local 30 did not meet the test of an unfair labor practice which would be enjoinable under § 10(*l*). The district court first found that Local 30 was not acting with an intent to coerce Gundle, thus disposing of any contention that the filing and maintenance of Local 30's suit reflected an improper motivation. Moreover, Local 30 has disavowed any claim to the landfill work, and the district court so found, stating that "contrary to the repeated assertions of the NLRB in its submissions to this court, Local 30 is not seeking employment at the work project in dispute." 759 F.Supp. at 217. Local 30 merely sought its contract damages for Gundle's breach of the Memorandum Agreement.[10]

The NLRB and Gundle[11] further suggest that the mere possibility that Local 30's action may ultimately require Gundle to pay twice for the landfill work inherently makes Local 30's action improperly coercive. We are not persuaded by this argument. If Gundle is required to pay twice,

rather focuses on the factors specified in *Kobell* and the other precedents cited herein.

**8.** As noted above, authority for the Board's effort to enjoin Local 30's § 301 suit is entirely derivative from the Board's contention that the three hours of picketing provides reasonable cause to assert an unfair labor practice charge. The picketing, of course, has long since ceased; the Board, however, seeks to use it as a basis to prevent continued prosecution of Local 30's lawsuit, regardless of the possible merits of that suit. *See supra,* note 5.

**9.** A lawsuit that is brought with malicious or improperly coercive intent can constitute an unfair labor practice, but a stringent standard must be met before an injunction will issue. *See Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (describing the factors which could permit an injunction against a lawsuit). In *Bill Johnson's,* the employer brought suit against workers who had begun concerted labor activities. There was extensive evidence in the record establishing that the employer was seeking to retaliate against the employees. Nonetheless, the Supreme Court held that retaliatory motive was not in and of itself sufficient for an injunction; there must *in addition* be a finding that the underlying legal claims lacked a reasonable basis, before a federal court would be permitted to enjoin the suit.

**10.** We cannot agree with the NLRB that seeking enforcement of an arbitral award based on a breach of contract to assign work is identical to seeking the disputed work itself. *See also infra* note 14.

First, the damages available under a breach of contract theory are not necessarily identical to the pay that the union's workers could receive from performing the disputed work. Traditional contract law requires that an injured party make reasonable efforts to mitigate damages after becoming aware of a breach. We must assume that a union seeking to enforce an arbitral award would be required to have made reasonable efforts to obtain other comparable work during the period in which the disputed work was being performed, and that any award would reflect this requirement. Secondly, except in the rare instances in which specific performance may be ordered, the remedy for a breach of contract does not include an award of the disputed work.

In light of the instant record and the findings of the district court, we are satisfied that Local 30 is not seeking to perform the disputed work merely because it seeks to enforce the arbitral award in its favor. We express no opinion, of course, on the merits of Local 30's enforcement action.

**11.** Gundle filed an amicus curiae brief urging reversal.

it will not be because of Local 30's legitimate efforts to enforce its arbitral award but rather, as the district court noted, it "would only be an unfortunate result of Gundle's decision to enter into conflicting labor agreements." 759 F.Supp. at 218 (citing *Hutter Constr. Co. v. Operating Engineers, Local 139*, 862 F.2d 641 (7th Cir.1988) (holding a 10(k) award to one union consistent with a contractual award to a different union)). The difficulty Gundle faces is caused not by any coercive activity on the part of Local 30 but rather by Gundle's own decision, after it had contracted with Local 30, to enter into a conflicting contract with Local 172.

Indeed, if we were to hold that Local 30's lawsuit necessarily constitutes improper coercion, we would be creating a rule under which an employer could unilaterally avoid a union contract. An employer could enter into a contract with one union and later, if offered better terms from another union, simply sign a contract with the second union. The competing claims could then be placed before the NLRB for a 10(k) decision. On the theory advanced here by Gundle and the NLRB, the employer could then enjoin all enforcement of the losing union's contract rights. Even if the Board awarded the work to the first union,[12] the employer would be no worse off than before it signed the second, conflicting contract.

Such a result does not reflect the intent of Congress in creating the mechanism of the 10(*l*) injunction, and we will not permit § 10(*l*) to be abused in such a manner. There may well be circumstances—such as those described by the Supreme Court in *Bill Johnson's*—in which a lawsuit is used improperly or coercively. This is not such a case, however, and the district court's findings of fact on this issue are not clearly erroneous.

The NLRB nonetheless claims that lawsuits to enforce arbitral awards conflicting with 10(k) decisions are unlawful. It cites *W.B. Skinner*, 292 NLRB No. 115, 130 LRRM 1259 (1989) (holding that prosecut-

ing an arbitral enforcement suit after a contrary 10(k) determination is unlawful); *International Longshoremen's and Warehousemen's Union v. NLRB*, 884 F.2d 1407 (D.C.Cir.1989) (enforcing NLRB decision that filing of grievance by union despite contrary 10(k) award constituted "coercion" under § 8(b)(4)(D)). The NLRB also points to *International Longshoremen's and Warehousemen's Union Local 32 v. Pacific Maritime Assoc.*, 773 F.2d 1012 (9th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986).

In *Pacific Maritime*, the Ninth Circuit upheld the NLRB's finding that a union violated § 8(b)(4)(D) when it brought a § 301 suit for "time-in-lieu" payments for certain work when there was a conflicting 10(k) decision. The *Pacific Maritime* court, however, explicitly noted that it was required to uphold the Board's finding that the filing was improperly motivated "unless [that conclusion was] arbitrary and capricious." 773 F.2d at 1012. We, on the other hand, must uphold the district court's finding that Local 30's § 301 suit was *not* improperly motivated unless that finding is clearly erroneous. *Kobell, supra.*

We therefore appropriately reach a different conclusion, and hold that the facts of the instant case do not fit within the Board's articulated theory. Moreover, we are not bound by the decisions of other courts of appeals or of the NLRB (which is itself a litigant before us). We are, on the other hand, bound by the Supreme Court's decision in *Bill Johnson's* which sharply limits the circumstances in which injunctions against lawsuits are permitted.

### C.

■ Even if the NLRB could show that the facts of the instant case fit its legal theory—which, as we have discussed, it has failed to do—and thereby establish reasonable cause, there would still remain the question as to whether injunctive relief is the "just and proper" remedy. The district court found no need to enjoin Local 30

---

12. In view of the fact that "employer preference" is one of the factors the NLRB considers,

such a result seems unlikely.

from pursuing its contractual claim, particularly where that action did not conflict with the Board's 10(k) decision. We have previously held that a decision of the district court on the question whether injunctive relief is "just and proper" is reviewed under an abuse of discretion standard, and that we should merely ensure that "the district court has focused upon 'the large objectives of the Act.'" *Kobell v. Suburban Lines, Inc.,* 731 F.2d at 1090 (citing *Hecht v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944)). Even if we were to assume that Local 30's actions amounted to an unfair labor practice—and we do not so hold—we are satisfied that the district court did not abuse its discretion in denying injunctive relief.

We are persuaded that there are at least three reasons why the denial of injunctive relief was proper. First, the Congressional purpose behind the enactment of § 10(*l*) was not to enjoin legal action, but was rather to enjoin clear obstacles and impediments to business, such as strikes, pickets, and boycotts.[13] As the Senate Report at the time of enactment stated, the purpose of 10(*l*) is "'the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining.'" S.Rep. N. 105, 80th Cong., 1st Sess. 8, 27 (1947), quoted in *Hoeber,* 759 F.Supp. at 216. The Ninth Circuit has also explained that 10(*l*) was designed to prevent disruptions which "threaten [a] danger of harm to the public." *Retail Clerks Local 137 v. Food Employers Council, Inc.,* 351 F.2d 525 (9th Cir.1965). Local 30 merely filed a lawsuit; it did not engage in actions that obstruct the free flow of business or threaten harm to the public. Therefore, the district court, in focusing on "the large objectives of the Act," *see Kobell,* 731 F.2d at 1090, correctly held that prosecution of Local 30's suit did not create the degree of harm necessary to justify an injunction.

■ Moreover, the Supreme Court has required restraint on the part of the federal courts in enjoining lawsuits. The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts. As we have earlier discussed, the Supreme Court in *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), held that two factors are required before an injunction against prosecution of a civil suit may issue: there must be an improper motive on the part of the plaintiff, and there must be a lack of a reasonable basis in law for the suit.

In the instant case, the district court found as a fact that Local 30 did not have an improper motivation in bringing the suit, and as we have held, that finding is not clearly erroneous. Moreover, Local 30 has disavowed all claims to the work at the landfill, and now seeks only damages for breach of contract.[14] So even if we were to hold that Local 30 does not have a valid claim to enforce the arbitral award (the second factor in the *Bill Johnson's* test), the first factor of *Bill Johnson's*—improper motivation—has not been met. Absent

---

**13.** Indeed, the federal courts are reluctant to enjoin the prosecution of litigation in general. *See, e.g., Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

**14.** The NLRB argues that this court, albeit in a different context, has held that there is no substantive difference between a union's seeking work and its seeking payment in lieu of the work. In *NLRB v. Local 1291,* 368 F.2d 107, 110 (3rd Cir.1966), *cert. denied,* 386 U.S. 1033, 87 S.Ct. 1482, 18 L.Ed.2d 595 (1967), Judge Hastie wrote that "the valuable part of a right to a particular job is the right to be paid for it. It follows that if workmen, who are entitled to a job under the terms of a labor contract, agree to forego the obligation of working but not the concomitant right to payment, they have not disclaimed any significant right." The holding in *Local 1291,* however, was merely that we would enforce an NLRB 10(k) determination. In the instant case, there is no dispute as to the enforceability of the 10(k) decision; we are concerned here with whether we will take the further step of requiring the imposition of a 10(*l*) injunction to suspend a lawsuit to enforce an arbitration award. Thus, the holding in *Local 1291* is inapposite. *See also supra* note 10.

improper motivation, therefore, the Board's injunction will not lie.[15]

The second reason why a denial of injunctive relief was proper is that a 10(*l*) injunction could not ultimately remove the threat hanging over Gundle of double payment for the same work. Injunctive relief under 10(*l*) is only a temporary measure. If the injunction against Local 30's suit had been granted, it would last only until final disposition of the underlying unfair labor practice claim. *See* NLRA § 10(*l*), 29 U.S.C. § 160(*l*) (the NLRB may seek injunctive relief "pending the final adjudication of the Board with respect to [the underlying unfair labor practice charge]").[16] While a disposition of that claim in favor of Gundle might permit Gundle or the Board to seek a further court order requiring Local 30 to withdraw its suit, it is also possible that such an order might not be sought or, if sought, might not be granted. Moreover, a disposition of the unfair labor practice claim that is *favorable* to Local 30 could *not* result in such an order. Thus, the effect of any injunction on Local 30's § 301 suit may very well be inconclusive.

The possibility that such an injunction could be of only a temporary nature results in it being impossible for such an injunction to cure the harm which the Board and Gundle have alleged here—namely, that the pendency of the suit pressures Gundle to reassign the work to Local 30. Since Gundle would still risk a later revival of the lawsuit, any incentive that Gundle presently has to reassign the work to Local 30 so as to avoid double liability would continue even if the injunction issued.[17]

■ Injunctive relief is available when "a district court ... finds that the threatened harm or disruption can best be avoided through an injunction." *Retail Clerks Local 137 v. Food Employers Council, Inc.*, 351 F.2d 525 (9th Cir.1965). Here, the district court properly did *not* so find. Local 30's pursuit of its claim will not affect the status quo, and a temporary injunction against its prosecution would be futile to remedy the harm that the NLRB and Gundle have alleged.

Third, the substantive arguments that the NLRB and Gundle raise before us could all have been raised as a defense in Local 30's § 301 suit which seeks to enforce the Joint Conference Board's decision in favor of Local 30. At oral argument, counsel for the NLRB conceded that the Board had considered intervening in the § 301 action, but chose not to do so. An injunction is thus not the only means by which the Board could achieve its objective—and indeed, as discussed above, injunctions against the prosecution of a lawsuit are a highly disfavored remedy.

The district court properly exercised its discretion in holding that a 10(*l*) injunction would not be just and proper in this case. Thus, the district court correctly denied the Board's petition.[18]

---

**15.** Indeed, in *Eisenberg v. Lenape Products, Inc.*, 781 F.2d 999 (3rd Cir.1986), this court held that even where the NLRB was properly found to have had "reasonable cause" under § 10(j) of the Act, the district court did not abuse its discretion in withholding injunctive relief on the basis that such relief would not be "just and proper."

**16.** See also Brief of Appellant at 24 (requesting this court to order an injunction whose duration would only be "pending the Board's disposition of the unfair labor practice case").

**17.** Although our decision does not hinge on whether or not the § 301 suit creates an incentive for Gundle to reassign the work to Local 30, we note that even if it does, Gundle has a counter-incentive not to discharge the members of Local 172, lest they similarly seek a remedy for breach of contract. It was Gundle's creation of the conflicting contracts, rather than Local 30's enforcement action, which created the pressure Gundle now faces.

**18.** The district court, among other determinations, stated: "Petitioner has not sufficiently established reasonable cause to believe that Local 30's prosecution of the lawsuit is an unfair labor practice within section 8(b)(4)(D) such that an injunction of the lawsuit is just and proper." 759 F.Supp. at 218. Even if we were to read this holding as failing to reach the issue of remedy and therefore failing to trigger the deferential "abuse of discretion" standard, we would still hold that the district court correctly determined that no improper coercion or other basis exists upon which a 10(*l*) injunction could be granted.

V.

Although the NLRB may have arguably stated a legal theory that could satisfy the standard required by *Kobell,* it has failed to demonstrate that the facts of this case fit within the Board's theory. Further, the district court properly exercised its discretion in holding that a 10(*l*) injunction would not be "just and proper" in this case.

We will affirm the district court's order, entered January 29, 1991, which denied the Board's § 10(*l*) petition for an injunction.