RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAYMOND ORRAND, Administrator of the Ohio ⌉
Operating Engineers Health and Welfare Plan, Ohio
Operating Engineers Pension Fund, Ohio Operating
Engineers Apprenticeship Fund, Ohio Operating
Engineers Education and Safety Fund; TRUSTEES OF
THE OHIO OPERATING ENGINEERS HEALTH AND
WELFARE PLAN; OHIO OPERATING ENGINEERS PENSION
FUND; OHIO OPERATING ENGINEERS APPRENTICESHIP
FUND, OHIO OPERATING ENGINEERS EDUCATION AND
SAFETY FUND,

　　　　　　　　　　　　　　*Plaintiffs-Appellants*,

　　　　*v.*

HUNT CONSTRUCTION GROUP, INC.; DONLEY'S INC.;
CLEVELAND CONCRETE CONSTRUCTION, INC. dba
Cleveland Cement Contractors, Inc.; B & B WRECKING
& EXCAVATING, INC.; PRECISION ENVIRONMENTAL
COMPANY,

　　　　　　　　　　　　　　*Defendants-Appellees*,

NATIONAL LABOR RELATIONS BOARD,

　　　　　　　　　　　　　　*Intervenor-Appellee*. ⌋

No. 16-3822

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 2:13-cv-00481; 2:13-cv-00489; 2:13-cv-00556;
2:13-cv-00864; 2:13-cv-00900—James L. Graham, District Judge.

Argued:  January 26, 2017

Decided and Filed:  March 30, 2017

Before:  GUY, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Allen S. Kinzer, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellants.  Frank W. Buck, LITTLER MENDELSON, PC, Cleveland, Ohio, for Hunt

Construction Appellees.  Martha A. Kinsella, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Intervenor-Appellee.  **ON BRIEF:**  Allen S. Kinzer, Daniel J. Clark, Elizabeth B. Howard, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellants.  Frank W. Buck, Meredith C. Shoop, LITTLER MENDELSON, PC, Cleveland, Ohio, for Hunt Construction Appellees.  Martha A. Kinsella, Kevin P. Flanagan, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Intervenor-Appellee.  Basil W. Mangano, Ryan K. Hymore, MANGANO LAW OFFICES CO., L.P.A., Cleveland, Ohio, Terrance G. Reed, LANKFORD & REED P.L.L.C., Alexandria, Virginia, for Amici Curiae.

GUY, J., delivered the opinion of the court in which GRIFFIN, J., joined.  CLAY, J. (pp. 8–14), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge.  Plaintiffs in this Employee Retirement Income Security Act (ERISA) contribution action appeal the district court's order granting defendants summary judgment.  We hold that the National Labor Relations Board's jurisdictional award precludes plaintiffs' ERISA claims, and therefore affirm.

**I.**

Defendant employers are signatories to collective bargaining agreements ("CBAs") with plaintiff funds' union, Operating Engineers ("Operators").  The CBAs provided that "the Employer shall employ Operating Engineers for the erection, operation, assembly and disassembly, and maintenance and repair of . . . Forklifts, Skidsteers . . . [which] shall be the work of the Operating Engineers (only applies to in-house crew), and within the jurisdiction as assigned to the Union by the American Federation of Labor."  The CBAs further stated, "[i]f the Employer assigns any piece of equipment to someone other than the Operating Engineer, the Employer's penalty shall be to pay the first qualified registered applicant the applicable wages and fringe benefits from the first day of violation."  Defendants' CBA with another union, Laborers International ("Laborers"), provided that "operation of forklifts . . . [and] skid-steer loaders . . . shall be the work of the laborer."  Defendants' CBAs with Operators and Laborers thus set out conflicting assignments for the same work.

Defendants assigned the disputed work to Laborers. In response, Operators filed pay-in-lieu grievances and threatened to strike. Defendants sought a jurisdictional determination by the NLRB under the National Labor Relations Act (NLRA) § 10(k).[1] The NLRB noted that defendants had assigned forklift and skidsteer work to Laborers for 15 to 26 years, and thus found no merit in Operators' work-preservation claims, instead characterizing them as attempts at work acquisition. *Operating Engineers, Local 18*, 360 NLRB No. 113, slip op. at *6 (2014). The NLRB further found that Operators' ongoing filing of pay-in-lieu grievances and threats to strike constituted unfair labor practices under NLRA § 8(b)(4).[2] *Id*. at *5, 7-8. As to the jurisdictional dispute, the NLRB considered the relevant factors and ruled that Laborers were entitled to perform the work. *Id*. at *8-10.

While awaiting the NLRB's decision, plaintiffs filed a complaint under ERISA § 515[3] seeking payment of contributions defendant allegedly owed under the CBAs, access to audit defendants' records, interest, costs, and injunctive relief. The NLRB intervened. Defendants sought a stay of plaintiffs' claims pending the NLRB's § 10(k) ruling, which the district court

---

[1]29 U.S.C. § 160(k), Hearings on jurisdictional strikes, provides:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

[2]29 U.S.C. § 158(b)(4) prohibits labor organizations from

. . . engag[ing] in, or . . . induc[ing] or encourage[ing] any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) threaten[ing], coerc[ing], or restrain[ing] any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (D) forcing . . . any employer to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization . . . unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work . . . .

[3]29 U.S.C. § 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

granted.  Following the NLRB's ruling, the parties filed motions for summary judgment.  The NLRB also moved for summary judgment, arguing that its jurisdictional award was dispositive of, and precluded, plaintiffs' CBA claims.  The district court agreed and held that the NLRB's jurisdictional award was a defense and bar to plaintiffs' claims.  Plaintiffs appeal.

## II.

This court reviews the district court's ruling on summary judgment *de novo*.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002).  Summary judgment is appropriate where there is no genuine issue of material fact and the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We take the evidence, and any inferences therefrom, in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Plaintiffs argue that § 515 obligates defendants to make contributions to Operators' funds despite lawful assignment of the disputed work to Laborers pursuant to the NLRB's § 10(k) award.  Plaintiffs are correct that, standing alone, an award of benefits causing an employer to double pay "would not be sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds."  *Tr. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling and Partition Co., Inc.*, 48 F. App'x 188, 196-97 (6th Cir. 2002).  *Ohio Ceiling*, however, did not involve a § 10(k) determination.  At issue is whether a conflicting jurisdictional award would render defendants' contribution obligations "inconsistent with law" under § 515.

Every court to consider conflicts between § 10(k) determinations and other labor laws has held that jurisdictional awards prevail, and may preclude inconsistent claims.  In *Carey v. Westinghouse Elec. Corp.*, the Supreme Court recognized that "[t]he superior authority of the [NLRB]" to decide jurisdictional disputes "may be invoked [by the employer] at any time" to avoid arbitrating conflicting contract claims.  375 U.S. 261, 272 (1964).  We have held that a § 10(k) determination "takes precedence over a contrary arbitrator's award" stemming from a CBA and precludes conflicting actions under the Labor Management Relations Act.  *UAW Local 1519 v. Rockwell Int'l Corp.*, 619 F.2d 580, 583-85 (6th Cir. 1980).  The Third Circuit

recognized that § 10(k) "would not be serving its intended purpose of preventing work disruption" if "the disappointed union could still seek a contractual remedy." *Local 30, United Slate Workers Ass'n v. NLRB*, 1 F.3d 1419, 1428 (3d Cir. 1993). In the D.C. Circuit, a party "cannot force an employer to choose between a Board [§] 10(k) award and a squarely contrary contract claim." *Int'l Longshoremen's and Warehousemen's Union v. NLRB*, 884 F.2d 1407, 1414 (D.C. Cir. 1989). The Ninth Circuit held that a party's "attempt to obtain payment for work to which it is not entitled would, if successful, completely undermine the [§] 10(k) work assignment." *Int'l Longshoremen's Union, Local 32 v. Pacific Maritime Ass'n*, 773 F.2d 1012, 1015 (9th Cir. 1985).

Plaintiffs note that the Seventh Circuit has avoided § 10(k)–CBA conflicts by distinguishing between jurisdictional awards (i.e., work assignments) and payment for work. *See Hutter Constr. v. Int'l Union of Operating Eng'rs, Local 139*, 862 F.2d 641, 644-45 (7th Cir. 1988). That circuit has limited its singular position, however, to the unique context of subcontractor work assignments not at issue here. *See Advance Cast Stone Co. v. Bridge Workers, Local Union No. 1*, 376 F.3d 734, 742 (7th Cir. 2004). Plaintiffs nonetheless contend that we should adopt the work-versus-pay distinction and rule that a § 10(k) award does not bar a conflicting ERISA action seeking only plan contributions rather than work reassignment. Although we have only discussed this distinction in *dicta*, we suggested we would not likely subscribe to it. *See Ohio Ceiling*, 48 F. App'x at 197 ("*Rockwell* suggests that this circuit would not adopt the distinction made by the court in *Hutter*."). We agree with the Third Circuit's view that "[t]he opportunity sought to perform labor is significant only as a means of obtaining compensation," and any difference between performing the work and being paid for the work is thus "ephemeral." *Local 30*, 1 F.3d at 1427.

The Supreme Court has acknowledged Congress's intent in § 10(k) to protect employers from "the detrimental economic impact" of jurisdictional disputes. *NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 130 (1971); *see also M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (courts must "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, *at least when those principles are not inconsistent with federal labor policy*." (emphasis supplied)). Federal labor

policy seeks to reduce the potential for protracted jurisdictional conflicts by conclusively adjudicating them via § 10(k). *See Local 30*, 1 F.3d at 1428 ("[§ 10(k)] proceedings are intended to . . . prevent[] work disruption by quickly and finally resolving jurisdictional disputes."). If aggrieved parties are permitted to "recover damages for work awarded to another union in a [§] 10(k) proceeding, the policy underlying [§ 15]8(b)(4)(ii)(D) of protecting employers from the detrimental economic impact of jurisdictional disputes would be severely undermined." *Id*. This would in turn frustrate a central purpose of § 10(k) – the NLRB's ability to conclusively resolve jurisdictional disputes – by pressuring employers to assign work in contravention of a § 10(k) award. *See Longshoremen's*, 884 F.2d at 1414.

Plaintiffs lastly argue that the limitation of defenses to ERISA actions should compel this court to narrowly interpret § 10(k) awards to preclude any defense to a § 515 action. Plaintiffs are correct that defenses to ERISA collection actions are limited. *See Laborers Pension Tr. Fund-Detroit & Vicinity v. Interior Exterior Specialists Constr. Grp., Inc.*, 394 F. App'x 285, 289-90 (6th Cir. 2010). This does not mean that the interests served by § 10(k) must yield to those of § 515. Congress could have written § 515 to subordinate § 10(k) rulings to an employer's obligation to contribute. It did not, and we do not ignore that fact. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

Congress did, however, explicitly provide an exception for employers' contribution obligations in § 515 where they are "inconsistent with law." To this end, in *Kaiser Steel Corp. v. Mullins*, the Supreme Court held that a federal court could entertain an employer's defense to a § 515 action that a supplier-specific contribution provision was illegal under LMRA § 8(e). 455 U.S. 72, 86 (1982). The Court noted that Congress "did not say that employers should be prevented from raising all defenses; rather they spoke in terms of 'unrelated' and 'extraneous' defenses." *Id*. at 88 (quoting 126 Cong. Rec. 23039 (1980)). It strains credulity to argue that a jurisdictional award is unrelated or extraneous to an employer's ERISA obligations where § 515 explicitly exempts from such obligations any payments "inconsistent with law."

ERISA § 515 and NLRA § 10(k) respectively embody strong federal interests in fulfilling employers' contribution obligations and in the finality of jurisdictional awards. But Congress

placed significant emphasis on the latter, while excepting from the former any contributions "inconsistent with law." Accordingly, we hold that the NLRB's § 10(k) award precludes a conflicting § 515 action. The district court thus properly granted defendants summary judgment.

**AFFIRMED**.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.  We are asked to decide whether Plaintiffs' lawsuit seeking payment of benefits in accordance with the terms of the collective bargaining agreement is "inconsistent with or contrary to" a separate decision by the National Labor Relations Board ("NLRB") resolving a jurisdictional work dispute between two competing labor unions.  The majority concludes that such an inconsistency exists and dismisses the action.  This decision is unsupported by precedent and repudiates the parties' contractual intent, as set forth by the applicable collective bargaining agreement.  Therefore, I respectfully dissent.

The action, which is the subject of this appeal, was brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by Raymond Orrand, Administrator of the Ohio Operating Engineers Health and Welfare Plan, Pension Fund, Apprenticeship Fund, and Education and Safety Fund, and the trustees of the aforementioned funds (collectively, the "Plaintiffs") against defendants Hunt Construction Group, Inc., Donley's Inc., Cleveland Concrete Construction, Inc., B&B Wrecking & Excavating, Inc., and Precision Environmental Company (collectively, the "Defendants").  Defendants are construction industry contractors that hire members of various unions as workers.  Defendants are also signatories to separate collective bargaining agreements negotiated with Laborer's International Union of North America, Local 310 ("Laborers") and International Union of Operating Engineers Local 18 ("Operating Engineers").  Plaintiffs constitute the trustees and administrators who operate ERISA funds on behalf of the employees of Operating Engineers.

As part of their construction projects, Defendants regularly use forklifts and small front-end loaders, known as skid steers.  Under Section 10 of the collective bargaining agreement (the "CBA") between Defendants and Operating Engineers, Defendants must employ Operating Engineers for the assembly, maintenance, and operation of the aforementioned forklifts and skid steers.  A different provision of the CBA, Section 21, holds as follows:

> If the Employer assigns any piece of equipment to someone other than the Operating Engineer, the Employer's penalty shall be to pay the first qualified

registered applicant the applicable wages and *fringe benefits* from the first day of violation.

Disregarding the terms of the CBA, Defendants utilized Laborers for forklift and skid steer work on their construction projects.

Operating Engineers protested Defendants' decision to employ Laborers in this capacity. The disagreement over the allocation of forklifting and skid steer work resulted in Defendants petitioning the NLRB by charging Operating Engineers with engaging in an unfair labor practice within the meaning of paragraph (4)(D) of 29 U.S.C. § 158 of the National Labor Relations Act because Operating Engineers lobbied to shift forklifting and skid steer work to their employees. Whenever such a charge is made, the NLRB is empowered under 29 U.S.C. § 160(k) ("§ 10(k)") to adjudicate which labor union is entitled to the disputed work. This is referred to as a jurisdictional dispute. Two hearings were held before the NLRB. The first was completed on July 26, 2012, and the second on February 28, 2013. On May 15, 2014, the NLRB decided that Laborers were authorized to perform the forklifting and skid steer work. Operating Engineers have appealed that determination; the appeal remains pending.

Before the NLRB reached its decision, Plaintiffs—who are distinct legal entities from Operating Engineers—filed the instant suit against Defendants on May 20, 2013 pursuant to 29 U.S.C. § 1145 of the ERISA statute. Section 1145 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Plaintiffs argued that regardless of how the NLRB resolved the labor dispute over forklifting and skid steer work, Defendants must, under the plain language of the CBA, make contributions to the funds of Operating Engineers. The district court stayed the action pending the NLRB's determination. After the NLRB issued its decision, the district court dismissed the lawsuit. Ignoring the merits of Plaintiffs' claims, the majority similarly concludes that granting relief to Plaintiffs would be "inconsistent with or contrary to" the NLRB's ruling allocating forklifting and skid steer work to Laborers.

However, the majority fails to persuasively explain the reasoning underlying its conclusion.  The majority begins by stating that courts have long held that Section 10(k) awards require the dismissal of lawsuits seeking contrary or inconsistent relief.  *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964) (finding that a § 10(k) award of work by the NLRB takes precedence over a conflicting arbitration award).  That statement is fine as far as it goes.  Certainly, a § 10(k) award "trumps the collective bargaining agreement . . . [and] a union cannot force an employer to choose between a [ ] section 10(k) award and a squarely contrary contract claim."  *Int'l Longshoremen's and Warehousemen's Union v. NLRB*, 884 F.2d 1407, 1413–14 (D.C. Cir. 1989).  But the Supreme Court has made clear that courts should "interpret collective bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law at least when those principles are not inconsistent with federal labor policy."  *See, e.g.*, *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015).  "In this endeavor, as with any other contract, the parties' intentions control."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010).

Although the majority states that enforcing the CBA is inconsistent with federal labor policy, it fails to convincingly explain why this is so.  Courts recognize that an NLRB decision does not render all contract provisions invalid.  *See Associated Gen. Contractors of Am., Inc., Oregon-Columbia Chapter v. Int'l Union of Operating Engineers, Local 701*, 529 F.2d 1395, 1397 (9th Cir. 1976).  Rather, only contract provisions that are "*squarely contrary*" to an NLRB ruling are rendered void.  *Int'l Longshoremen's*, 884 F.2d at 1413–14 (emphasis added).  Generally, "the mere fact that an award of benefits could cause an employer to 'pay double' would not be sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA fund."  *Trustees of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 F. App'x 188, 196–97 (6th Cir. 2002) (citing *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809–10 (9th Cir. 1982)).  Previously, we stated that in situations where an employer is exposed to conflicting collective bargaining agreements, if the trustee shows a contractual obligation "to make contributions to both plans, even though only one union did the work," then the other union may collect payments owed.  *Trustees for Michigan BAC Health Care Fund v. OCP Contractors, Inc.*, 136 F. App'x 849, 851 (6th Cir. 2005).  Assuming that Section 21 of the CBA entitles Plaintiffs to collect fringe benefits regardless of whether work was assigned to them or

not, as Plaintiffs argue the plain reading of the CBA requires, a contractual obligation exists for Defendants to "double-pay."

In the instant case, there are two separate contract provisions in the CBA. Section 10 compels Defendants to assign forklifting and skid steer work to Operating Engineers. Section 21 obligates Defendants to make contributions to the funds of Operating Engineers. Undoubtedly, a suit seeking enforcement of Section 10 of the CBA would be "squarely contrary" to the NLRB's decision assigning disputed work to Laborers. However, it does not follow that Section 21 of the CBA—which is the provision of the CBA that gives rise to this lawsuit—is equally "inconsistent with or contrary to" the NLRB's decision. Rather, Defendants can easily comply with the NLRB ruling by assigning forklift and skid steer work to Laborers, while simultaneously making payments to Plaintiffs consistent with the terms of the CBA. Such a scenario is neither contradictory nor implausible. And it certainly is not a case involving a *"squarely contrary contract claim." Int'l Longshoremen's*, 884 F.2d at 1414 (emphasis added).

The majority cites a number of cases in order to justify its holding that Defendants' requirement to "double-pay" is contrary to the NLRB decision. But not one of the cases cited supports this contention. Each case involves either a directly contrary holding between the NLRB and a separate arbitrator, or contains factual circumstances altogether dissimilar from the instant case. For example, in *Int'l Union, United Auto., Aerospace & Agr. Implement Workers (UAW) & its Local 1519 v. Rockwell Int'l Corp.*, 619 F.2d 580, 582 (6th Cir. 1980), this Court held that when an arbitrator's decision to award assignment of work directly contradicted an NLRB ruling, the NLRB ruling controlled. In the instant case, there is no contradictory arbitrator's ruling, and thus this issue is not implicated. Similarly, in *Int'l Longshoremen's & Warehousemen's Union, Local 32 v. Pac. Mar. Ass'n*, 773 F.2d 1012, 1016 (9th Cir. 1985), the court held that an arbitrator's decision to assign the work to the union was not enforceable pursuant to a suit under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). But again, a direct contradiction existed between an NLRB decision to award work and an arbitrator's separate decision to assign work to a different labor union. The court decided that § 301 could not be used to circumvent the NLRB holding. Likewise, in *Int'l Longshoremen's*, 884 F.2d at 1413–14, the D.C. Circuit held that a union could not assert breach of contract claims

when the NLRB decided to award work to another party in contravention of the union's collective bargaining agreement. However, the plaintiffs sought contract damages for a contractual term that was directly contrary to the NLRB ruling. The contract provision required the assignment of work to the plaintiffs' labor union, whereas the NLRB decision accorded the work to a different union. Unlike in *Int'l Longshoremen's*, the contract provision for which Plaintiffs pursue enforcement is distinct from the clause in their CBA that requires assignment of work to Operating Engineers. Therefore, the cases are inapposite. Finally, in *Local 30, United Slate Workers Ass'n v. NLRB*, 1 F.3d 1419 (3d Cir. 1993), the court held that enforcement of a § 301 lawsuit under the Taft-Hartley Act undermined the § 10(k) determination of the NLRB. But again, and unlike the instant case, the NLRB expressly considered whether or not it was appropriate for the plaintiff to maintain its § 301 suit and found that such a suit constituted an unfair labor practice.

The circumstances of this case are best reflected in the logic of the Seventh Circuit's decision in *Hutter Const. Co. v. Int'l Union of Operating Engineers, Local 139, AFL-CIO*, 862 F.2d 641 (7th Cir. 1988). In that case, a general contractor subcontracted with a third party to perform work on a project. A dispute arose because the general contractor was a party to a collective bargaining agreement with a union requiring that the contractor employ only its union workers to perform certain tasks. The subcontractor was a party to a separate collective bargaining agreement, which directed those same tasks to be performed by the employees of an unrelated union. A § 10(k) proceeding was held before the NLRB and it determined that the subcontractor's union was entitled to perform the work. The original union sued on the basis of its collective bargaining agreement. The Seventh Circuit held that the subcontracting grievance was a distinct non-jurisdictional claim separable from the jurisdictional issue decided by the NLRB, the resolution of which was not inconsistent with the NLRB's award of work. *Id.* at 644 (finding that the arbitrators and NLRB's award are "consistent remedies that reflect the divergent issues addressed in the respective proceedings."). Specifically, the court stated that at the §10(k) hearing, the NLRB ruled "on a number of non-contractual factors, that [the second union] had the superior claim to the forklift work. The critical issue is whether the arbitrator, by awarding back pay . . . necessarily determined that they had the superior claim to the forklift work." *Id.*

The Seventh Circuit's holding rested on the fact that the agreement in question "explicitly authorized the arbitrator to award back pay for violations of its provisions."

The majority wrongly suggests that the facts of *Hutter* are limited to the subcontracting context. The principles the case articulates are equally relevant in the instant action. The CBA contains two separate sections. The language of one states that Defendants must employ Operating Engineers for fork lifting and skid steer work. Like the agreement before the court in *Hutter*, the second clause "explicitly authorizes" payment of contributions even if work is assigned elsewhere. This distinction between Section 10 and Section 21 is significant—both legally and contractually. When sophisticated entities come together and expressly negotiate terms in a collective bargaining agreement, this Court should not upend those terms absent a compelling reason. The fact that there are two clauses here, one of which is contrary to an NLRB holding, and the other not, dictates the outcome of this case. Although this approach may open Defendants to the possibility of "double-paying" for the completion of a single task, Defendants only have themselves to blame if that is the case. Defendants had every opportunity to negotiate different terms in their CBA to avoid this predicament.

The fact that this case arises in the context of ERISA further justifies narrowly reading the scope of the NLRB's jurisdiction here. Section 515 permits ERISA fund trustees special status akin to a holder in due course, entitling the trustees to enforce the CBA regardless of available defenses under the common law of contracts. *See Ohio Ceiling & Partition Co.*, 48 F. App'x at 192. Section 515 was enacted because Congress was concerned about "the problem that had arisen because a substantial number of employers had failed to make their 'promised contributions' on a regular and timely basis." *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 546 (1988). As this Court has noted, a fund "must assume that all participants in a plan are following the stated terms; no other approach permits accurate actuarial computations and proper decisions about which claims to pay." *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 567 (6th Cir. 2015). Foreclosing Plaintiffs' action in this case undermines that purpose. Plaintiffs relied upon the terms of the CBA, which allocated the aforementioned fringe benefits to the plans. Their calculations were specifically

undertaken with these payments in mind.  The majority's decision jeopardizes these assumptions and threatens the viability of Operating Engineers' plans without a clear basis in law.

Again, Defendants and Operating Engineers reached a negotiated agreement, manifested in the CBA, a complex document signifying the parties' intent.  Absent any clear contradiction with federal labor policy, we must interpret the CBA according to ordinary contract principles.  *See M & G Polymers*, 135 S. Ct. at 933.  Ordinary contract principles dictate that Defendants have an obligation to pay contributions to Plaintiffs and to pay Laborers for the forklifting and skid steer work performed.  The majority has not shown why this is contradictory.  I therefore respectfully dissent.